UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL AND JEANNINE INGRAHAM | CIVIL ACTION |
| VERSUS | NO. 07-3555 |
| PLANET BEACH FRANCHISING CORPORATION | SECTION "C" (3) |

## ORDER AND REASONS

Before the Court is defendant's Motion for Summary Judgment. Rec. Doc. 71. Plaintiffs oppose. Rec. Doc. 88. This matter was taken under advisement on the briefs. Based on the record in this case, the applicable law, and the memoranda by parties, the Court GRANTS IN PART AND DENIES IN PART defendant's motion for the following reasons.

## I. BACKGROUND

Planet Beach Franchising Corp. ("Planet Beach") sells franchise rights to individuals, allowing the franchisees to operate tanning salons under the trademark/logo: "Planet Beach." On February 9, 2004, Michael and Jeannine Ingraham ("Ingrahams") entered into a franchise agreement with Planet Beach. In October of 2004, the Ingrahams opened "Planet Beach West Chester" in West Chester, Pennsylvania (a suburb of Philadelphia). Planet Beach West Chester is located 3.9 miles south of West Chester University (no street address, or metes and bounds description given).

The franchise agreement provides franchisees with a protected territory in which to operate their tanning salon. Essentially, the franchise agreement prohibits Planet Beach from

establishing or locating another Planet Beach franchise within the protected territory. In this case, the Ingrahams' territory was defined as "Philadelphia, PA 30,000 in Population."

In late 2006, Planet Beach and Robert and Cherie Friedman signed an agreement to open another Planet Beach franchise located approximately 5 miles northwest of the Ingrahams' franchise. The Ingrahams protested the location of the Friedman franchise and have filed suit claiming that Planet Beach breached the terms of the franchise agreement based on the protected territory clause. The Ingrahams filed a Motion for Partial Summary Judgment arguing that the definition of the Ingrahams territory was ambiguous and must be construed against the drafter. This Court agreed. (Rec. Doc. 52).

Defendant seeks summary judgment on the following issues:

1.) That the Franchise Agreement prohibits Planet Beach from locating a second franchise within the prescribed Territory, and provides no other territorial rights;
2.) That the Franchise Agreement does not define an exclusive marketing area;
3.) That the Franchise Agreement clearly limits the Territory to a population of 30,000; thus, the only dispute at issue is Plaintiffs perception of the actual location of the Territory; and,
4.) That Plaintiffs claims under DTPA and 15 USC 45 fail.

(Rec. Doc. 71 at 27-28). However, the analysis and argument in defendant's motion does not always logically correspond with one of the four requests listed above.

## II. LEGAL STANDARDS

**A. Summary Judgment Standard**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n*., 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

**B. Contract Interpretation Standard**

In Louisiana, "contracts have the effect of law for the parties." La. Civ.Code art.1983. Under La. Civ.Code art. 2045: "Interpretation of a contract is the determination of the common intent of the parties." The interpretation of an unambiguous contract is an issue of law for the

3

court to decide. *Amoco Production Co. v. Texas Meridian Resources Exploration Inc.,* 180 F.3d 664, 668 (5th Cir.1999). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." La. Civ.Code art.2046. "In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir.1998).

A contract is ambiguous under Louisiana law "when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir.1996). Relevant rules of construction include interpreting each provision in light of other provisions so that each is given meaning suggested by the entire contract, interpreting provisions susceptible of different meanings so as to not to ignore them, and interpreting contracts in ways that leads to unreasonable consequences or inequitable or absurd results even when the language used is explicit. *Texas Eastern, supra*.

"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages and the conduct of the parties before and after the formation of the contract ..." La.Civ.Code art. 2053. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La.Civ.Code art. 2055. *Guilbeau v. C & D Reprographics-Lafayette, Inc.*, 568 So.2d 206 (La.App.1990), writ denied, 571 So.2d 653 (La.1990).

**III. ANALYSIS**

As an initial matter, the Court addresses Planet Beach's argument that the UFOC must be read in combination with the Franchise Agreement. The Court notes that Part E of the Background Section of the Franchise Agreement states:

> You acknowledge that you have read this Agreement and Planet Beach's Uniform Franchise Offering Circular, and that you have been given an opportunity to obtain clarification of any provision that you did not understand. You also understand and agree that the terms and conditions in this Agreement are necessary to maintain Planet Beach's high standards of quality and service, and the uniformity of those standards at all Planet Beach Tanning Salons.

Rec. Doc. 71-5 at 9. However, the Court is not convinced that the text of Part E is sufficient to incorporate the UFOC by reference. Planet Beach relies on *AWC, Inc. v. CSF Const., Inc.*, 931 So.2d 382, 386-87 (La.App. 4 Cir. 2006), for the proposition that "the jurisprudence is clear that documents may be incorporated in contracts by attachment or reference thereto." In *AWC, Inc.*, the language that incorporated a separate document stated, "[t]he buyer agrees that the terms and conditions on the reverse side hereof **are hereby expressly incorporated herein by reference and constitute a part of this contract**." *AWC, Inc.*, 931 So.2d at 386 (emphasis added). Clearly, Part E did not expressly incorporate the UFOC by stating, "You acknowledge that you have read this Agreement and Planet Beach's Uniform Franchising Offering Circular, and that you have been given an opportunity to obtain clarification of any provision you did not understand." Rec. Doc. 71-5 at 9. Accordingly, the Court relies on the actual contract, the Franchise Agreement, in determining whether or not summary judgment is warranted on defendant's four arguments.

The Franchise Agreement's "Territory" clause states:

3.1 Territory. During the terms of this Agreement, so long as you are in

> substantial compliance with the terms and conditions of this Agreement, Planet Beach will not establish or locate, or grant to any third party the right to establish or locate another Planet Beach Tanning Salon using the System and Proprietary Marks within the Territory identified, or to be identified, in the Data Sheet, except as set forth in paragraph 3.2 below. This Agreement does not grant you any other territorial rights.
>
> 3.2 Reservation of Rights. Planet Beach retains the right, among others, to: (I) establish and grant others the right to establish Planet beach Tanning Salons outside the Territory; and (ii) use the Proprietary Marks in alternative forms of distribution for selling its products including, but not limited to, tanning beds, lotions and other products. Such forms of distribution include, without limitation, offering Planet Beach products within health clubs, beauty salons, spas, stores, boutiques and other locations, as well as through fixed stores, the internet and mail order sales.

Rec. Doc. 71-5 at 10. In addition, the "Approved Location and Territory Addendum" to the Franchise Agreement states, "Franchisee's Territory (as defined in Section 3 of the Franchise Agreement) shall encompass the following area: 30,000 in population." Rec. Doc. 71-6 at 15. The Ingraham's Territory is also described in the "Data Sheet" as "Philadelphia, PA 30,000 in Population." Rec. Doc. 71-5 at 1.

*"Overlap"*

Defendant claims that the Franchise Agreement only guarantees a "geographic buffer" between franchises and specifically allows for cross-marketing by competing franchises. By allowing cross-marketing, defendant claims that Agreement allows for "overlap." Rec. Doc. 71-2 at 14.[1] An overlap would occur, for example, where two franchises are themselves not physically located in the territory of the other, but the territory surrounding the franchises

---

[1] This is presumably related to the first claim, namely that plaintiffs possess "no other territorial rights" by virtue of the Franchise Agreement. This could also relate to defendant's second claim that the Agreement does not create an "exclusive marketing area."

coincides. The Franchise Agreement does not explicitly mention the possibility of overlapping

territories of franchisees. Examining the rest of the contract, it appears that the contract is

ambiguous regarding whether or not overlapping is allowed. On the one hand, the Franchise

Agreement specifically forbids the placement of another franchise within identified territory and

thereby implies that operation of Planet Beach franchises within a particular territory is

exclusive. Moreover, the default stated in the Agreement is that franchisees are forbidden from

marketing outside their territory unless they have received prior written authorization from

Planet Beach. Rec. Doc. 71-5 at 20 (Section 15-2 of the Franchise Agreement). Although the

Agreement states that Planet Beach will not "unreasonably withhold" permission for extra-

territorial marketing, the default of the Agreement is to prohibit such activity. On the other

hand, section 1 of the Franchise Agreement states that the franchise is "nonexclusive" ( Rec.

Doc. 71-5 at 9) and section 3.2 expressly states that the Agreement does not grant a franchisee

any additional territorial rights (Rec. Doc. 71-5 at 10). The testimony of Planet Beach's

corporate representatives add to the ambiguity.[2] For example, the deposition testimony of

Richard Juka, Planet Beach's Chief Operating Officer implies exclusivity. Mr. Juka testified that

"we draw the ring [around the spa location] and nothing goes inside that ring but your own

location." Rec. Doc. 88-5 at 8. Mr. Juka also testified that "a population of approximately

---

[2] While in general, parol evidence may not be considered in contract interpretation, this Court has previously held that where a contract is ambiguous, parol evidence is admissible to discern the intent of parties. *Take Me Home, Inc. v. New York Life Ins. Co.* 1994 WL 710424, 1 (E.D.La.1994)(Berrigan, J.); *see also Southern Hardware Co., Ltd. v. Honeywell Information Systems, Inc.* 373 So.2d 738, 740 (La.App., 1979)(holding that "parol evidence is not admissible to prove a collateral agreement which is inconsistent with the written contract, [but] it is admissible to supply a patent deficiency in the contract. This rule is particularly applicable to situations where the contract is silent regarding an essential term or a term the parties would necessarily have considered.")

7

30,000 people is needed to support each franchise location." *Id*. at 13. **As the contract is ambiguous with regard to overlapping, defendant's motion for summary judgment is denied as to this argument.**

*"Detrimental Reliance"*

Defendant next argues that to the extent plaintiffs claim that a) defendant orally modified their territory and b) plaintiffs detrimentally relied on those oral representations, such a claim is prohibited by the integration clause of the contract.[3] The parties contest the correct boundaries of the territory and this Court has previously concluded that the terms of the contract regarding the definition of "territory" is ambiguous. Therefore, the jury, as factfinder, will determine the appropriate boundaries of the territory. Defendant's motion for summary judgment appears to seek summary judgment on the legal and factual support for plaintiffs' definition of the territory. At a minimum, defendant's motion presupposes that the jury accepts the defendant's definition of territory and accordingly, the motion is premature.

Even if the motion is not premature, where a contract term is ambiguous, parol evidence is admissible to illuminate parties' intent. *See* note 2 *supra*. As such and as a matter of law, it is not unreasonable for plaintiffs to have relied on the oral representations to assist their understanding of the contract. **Accordingly, defendant's motion for summary judgment as to**

---

[3] It is unclear which claim this argument is related to. Based purely on structure of the memo, it would appear that this argument is intended to support the first claim. This argument could conceivably relate to the second claim, in that plaintiffs define their territory in part based on the marketing advice of defendant employees, but the substance of the argument focuses on whether detrimental reliance can shift the borders of the territory. This argument could also relate to the third claim, but plaintiffs' claim of detrimental reliance is not in conflict with defendant's argument that the actual location of the territory is in dispute.

**plaintiffs' claim for detrimental reliance is denied.**

*"Implied Covenant of Good Faith and Fair Dealing"*

Defendant argues that plaintiffs' claim of breach of the "implied covenant of good faith and fair dealing" can not be used to reform the contract because a) defendant abided by the terms of the contract and b) there is no evidence defendant acted from ill-will.[4]  Louisiana recognizes an implied covenant of good faith and fair dealing in every contract. *Brill v. Catfish Shales of America*, 727 F.Supp. 1035, 1039 (E.D.La.1989).  However,"[t]he implied obligation to execute a contract in good faith usually modifies the express terms of the contract and should not be used to override or contradict them." *Clark v. America's Favorite Chicken Co.* 110F.3d295, 297 (5th Cir. 1997).

As to the evidence of "ill will", "the implied covenant of good faith performance of conventional obligations or contracts is not measured by a higher objective standard, but by a subjective standard. A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith." *Brill*, 727 F.Supp. at 1041 (exhaustively reviewing the history and application of "good faith" standard in contract cases under Louisiana law). Plaintiffs have failed to indicate any specific evidence of "ill-will," other than conclusory allegations of financial greed.  See Rec. Doc. 88 at 38.  Plaintiffs point this Court to deposition testimony by current and former Planet Beach employees, but none of the testimony indicates anything more than seeking a financial profit.  None of the testimony suggests that financial profit is sought at the expense of the franchisee.   **Accordingly, defendant's motion for**

---

[4] It appears that this argument relates to the claim that the only viable dispute is the location of the Territory and not any other ancillary claims by plaintiffs.

**summary judgment as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is GRANTED.**

*Plaintiffs' claims under Louisiana Unfair Trade Practices Act and 15 USC §45*

Under the Louisiana Unfair Trade Practices Act (LUPTA), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." La Rev. Stat. Ann. § 51:1405(A). Parties who are harmed by another party's unfair or deceptive practice may bring suit to recover actual damages. La Rev. Stat. Ann. § 51:1409. Although the plain text of section 1409 states that "any person who suffers any ascertainable loss" as a result of such acts may bring suit, *id.*, the Fifth Circuit has limited relief to personal consumers or business competitors. *See, e.g., Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220 (5th Cir.1991); *Gardes Directional Drilling v. U.S. Turnkey Drilling Exploration Co.*, 98 F.3d 860 (5th Cir.1996). In order to qualify as a business competitor, the plaintiff must actually or potentially engage in business that competes directly or indirectly with the defendant. *Traina v. Nationsbank of Texas, N.A.*, 2001 WL 1041773 (E.D.La.2001).

This Court has repeatedly noted that reconsideration of the Fifth Circuit's opinion may be in order, especially in light of the expansive language offered by the Louisiana Court of Appeals in *Capitol House Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, 725 So.2d 523, 530, 1998-1514 (La.App. 1 Cir. 12/10/1998); *see also Plaquemine Marine, Inc. V. Mercury Marine*, 859 Sop. 2d 110 (La.App. 1 Cir. 7/25/03)(noting that federal courts continue to follow the Fifth Circuit, but state appellate court following its own precedent). *See Higbee Co. v. Greater*

*Lakeside Corp.,* 2007 WL 3275142, 2 (E.D.La.,2007) (Berrigan, J.); *5-Star Finance, Inc. v. Wood*, 2000 WL 1532896 (E.D.La) (Berrigan, J.); *see also discussion in Hamilton v. Business Partners, Inc.*, 938 F.Supp. 370, 371-74 (E.D.La.1996) (Berrigan, J.). However, this Court has consistently held that because the Fifth Circuit precedent stands, it is prevented from entertaining claims by plaintiffs who are not consumers or business competitors under the statute.

Defendant also argues that plaintiffs lacks standing to sue for violation of 15 U.S.C. §45. Plaintiffs do not address this argument in their memorandum. The text of the statute is clear: "[t]he [Federal Trade] Commission is hereby empowered and directed to prevent persons, partnerships, or corporations. . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. §45(a)(2). Private persons do not have standing to enforce 15 U.S.C. §45. *See e.g.*, *Helms v. Consumerinfo.com, Inc.*, 436 F.Supp.2d 1220, 1235 n.19 (N.D.Ala. 2005)*(citing Red Diamond Supply, Inc.v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1008 n.13 (5th Cir. 1981). **Accordingly, defendant's motion for summary judgment is GRANTED with respect to plaintiffs' claims under LUPTA and 15 U.S.C. §45.**

## IV. CONCLUSION

**Accordingly, the Court GRANTS IN PART AND DENIES IN PART defendant's Motion for Summary Judgment as follows:**

    **As the contract is ambiguous with regard to overlapping, defendant's motion for summary judgment is DENIED as to this argument.**

    **Defendant's motion for summary judgment as to plaintiffs' claim for**

11

**detrimental reliance is DENIED.**

**Defendant's motion for summary judgment as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is GRANTED.**

**Defendant's motion for summary judgment is GRANTED with respect to plaintiffs' claims under LUPTA and 15 U.S.C. §45.**

New Orleans, Louisiana, this 1st day of April, 2009.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE